The next matter, number 23-1447, United States v. Jorge Luis Armenteros-Chervoni. At this time, would counsel for the appellant please introduce herself on the record to begin? Thank you. May it please the court, I'm Tina Schneider. I'm here on behalf of the appellant. If I can reserve two minutes for rebuttal. You may. Thank you. My client, Mr. Armenteros, was convicted of three counts of making a false statement and two counts of attempted smuggling of contraband into the federal prison here. I'd like to start out with the evidentiary. That is the testimony of Mr. Laguna and the testimony about Mr. Armenteros' client, Kendrick Moral Torres. The district court, over numerous and repeated objections, allowed the government to present the testimony of Laguna, who did not know the defendant at all, was not involved in this offense. Mr. Laguna testified that he was in a drug gang, that he smuggled contraband into the federal prison and the state prison on behalf of his boss, the drug lord. Laguna also testified about how inmates used cell phones. That is, that the drug lords used the cell phones to control the activities of the gangs while they were incarcerated. What is it there to allow this to provide confidence? I don't understand much. I don't have much what you gave of limited instruction. I was just looking at the testimony. OK. Two things there. First off, three things, I guess. This was not a complicated case. My client was caught with contraband trying to enter the federal prison. The only question was whether he knew he had that contraband. So it was not a case where a lot of background was needed. If background was needed, maybe it was like, oh, this is a federal prison with 1,200 inmates and 10 pay phones. But what the judge- Why wouldn't it be relevant? I'm not saying this undermines your overall point, but why wouldn't it be quite relevant to have some evidence indicating that prisoners in the prison want access to cell phones? Well, a couple of things. It's not obvious that you just intuit that as a juror, is it? If the government could have introduced evidence and there may be evidence to this effect on the record, that if you use the pay phones, the government can listen to your conversation. And they could also say that there is actual evidence of people in the prisons wanting them to conduct the drug trade. I think once you get into the reasons why people want it, then you're getting into very prejudicial- Well, that's different than relevant. Well, I don't even think it's relevant, and here's why. The judge argued that the uses of the cell phones went to demand, and the demand for the cell phones went to value. And the value of the cell phones went to motive. But that's the government's theory, and the judge- That's the government's theory, and the judge- Why should the government be limited in how it presents its case? Because of a few things. Why inmates wanted the cell phones is not relevant. Value is value, and so if the cell phones are valuable inside, the jury does not need to know that they're used to order killings on the outside. That is not relevant to whether or not my client committed these offenses, whether or not he- Is it relevant though to motive so that it is beneficial to your client that his clients receive items that not only have monetary value but have useful value? I think what's relevant to motive would be value, and you got that testimony through the expert. Yes, or the government did. And so our argument is this wasn't relevant. The second argument is even if it has a smidgen of relevance, it's so highly prejudicial. And it's not- Even with Judge Iris' instruction? Yes. The use of that testimony? Yes, because the instruction said there is no evidence linking Mr. Armenteris to these particular smuggling episodes. And you can use this evidence to determine whether there's a demand for cell phones and to show different methods by which contraband is introduced into the MDC. Well, different methods of how contraband is introduced into the prison doesn't seem to have any connection with the case at all. And whether there's a demand in the MDC for cell phones was intertwined with why, in the testimony, why the inmates wanted cell phones. So the worry is that that second limiting instruction opens it up to the jury considering the purpose for which it was being brought in. Absolutely. When there's no indication whatsoever that this particular defendant was bringing it in for that purpose. Yes. I got it. Yes. And so the jury was allowed- There was nothing in the limiting instruction that barred the jury from making a leap. Laguna was smuggling cell phones into the prison for his drug lord. Therefore, the defendant was smuggling on behalf of this other drug lord who was a client of his for whom he did not submit a visitor's form that day. But then that's the thing again. It's the government's theory. So if they have a theory of how to present the case, how can you limit them? How can you prove the case? Because it goes directly- Again, we're talking about I don't know how many STEM cards. I can't remember the exact number. Seventy-five. Seventy-five. So it's a huge number. This is not like a- The government doesn't know how the defense is going to defend himself before preparing for trial or for presenting the evidence. The defendant doesn't have to do anything but could question, make a lot of questions. The government has to lay its foundation. The government is not allowed to say, hey, we have this theory. The theory is that because my client represented- So they have a theory, and they're trying to prove it. But none of this. So unfairly prejudicial. Let me just back up one step. The particular witness who was allowed to testify that you're challenging under 403- I'm sorry. The particular witness that you're challenging the testimony of under 403, that witness is not someone that your client was visiting that day. Correct? He was not someone who even knew I was there. Just help me out. But your client was not visiting that. Right. The government put forward nothing to show any connection between that witness and your client, correct? Correct. So the government's theory is not that your client was bringing stuff in for that witness. That is correct. And your concern is that the jury nonetheless would conclude otherwise? No. Our concern is that because there was this testimony that Laguna smuggled cell phones on behalf of a drug lord, that my client was doing the same thing. And in fact, in their rebuttal closing, the government said, and this was not stricken, anyone smuggling cell phones to Laurel Torres was part of this organization, just like Laguna was part of his. So what the government was saying was, hey, they're both the same, Laguna and my client. Right, but I'm just trying to take this in pieces. The instruction specifically said you cannot consider this evidence for purposes of determining he was part of any criminal organization. No, that is not what the limiting instruction said. What does it say? The limiting instruction said there is no evidence linking defendant to this smuggling incident. And then doesn't it say what you may consider it for? Yes, it says you can consider it concerning whether there is a demand in MDC for cell phones. And you can consider this to show different methods by which contraband is introduced. And your worry is that first instruction opens it up for the jury concluding that because this witness testified, things are brought in for the drug courts, that they can then conclude that therefore this person must have been doing it for that reason. There's nothing in the limiting instruction that tells them they can't do that, and in fact that's exactly how the government used that evidence. And let me just take apart two things. Certainly the government is entitled to make the case that in knowing we brought it in to get it to an ending.  Okay. The government's theory of why he would have known we'd done that is what? What was the government's theory as to why that it was known? The government's theory was that my client was part of this criminal network, this drug organization, and that he was bringing up in for his client oral torts. And that is remarkable in a couple of respects. The testimony was… There's nothing wrong with that theory. Either the jury buys it or they don't buy it. That's a different point than whether there's a 403 problem. The government's certainly entitled to make its case that he knowingly brought it in by trying to show this is why he did it. But he did not submit a visitor form for oral torts. I understand. That's now going to the 403 issue. Okay. And what we're trying to figure out is given the government's theory, which it's entitled to make, what is the relationship between this testimony that you're objecting to? They're not claiming it's the same criminal gang. The government is not saying that, right? Right. But they're permitted to say he's bringing it in for a purpose, that is to do X, right? Nothing wrong with that. They have to show he's knowingly bringing it in. And their theory as to why is just what you said. That he was smuggling it in for— Now they're putting on evidence. Here's someone else who did similar. Is that the idea? Yes. Okay, and you object because that's highly prejudicial. And then the question is— And irrelevant. And irrelevant. You mentioned they have to prove knowingly, so doesn't this go to knowingly? It's a situation in MDC. You can't look at isolated facts and look at the 70-whatever SIM cards. Isn't that circumstantial evidence? You can't use the government's obligation to prove knowingly to open the door to this evidence about other drug gangs and my client's client. I mean, the government tried this case as if it was a RICO trial or a drug conspiracy trial. The question here was, did he smuggle it in? Let me just make it simple. Tell me, is this the basic idea? If I'm trying to prove Joe murdered Steve, I can't put on testimony that Bob murdered Sue. Therefore, you can conclude Joe murdered Steve. And you're saying this is really not that different than that. Yes. Okay. I know this is problematic for a whole lot of people. And their response is it is pretty different than that because of the context, which is we're in a prison bringing contraband into a prison. And in that context, the notion that bringing a cell phone in is something that's very valuable to prisoners there is corroborated by the fact that it has been known to happen for that purpose. And what's your response to that? The government could show that in non-prejudicial ways. Also, the government's theory that my client was smuggling this stuff to moral torrents allowed them, over objection, to get in evidence about moral torrents. Can we just move to the duplicitous? Oh, okay. Great. I'd like to address this issue. Can I ask you a specific question about that? The government argues that someone who smuggled heroin and a firearm could be charged twice, even though they fall under the same definition in D1A. How does that relate to our readings of the contraband? So the whole question here is what did Congress intend to do with the unit of prosecution? And the bottom line is it's unclear. And there are many ways you could interpret this statute with different units of prosecution. And one could be each prohibited object, in which case Mr. Armenteros could have been charged with 77 counts of violating the statute. And as we argue in our brief, that is an absurd result that someone who smuggled in one firearm would be subject to a much lower sentence than he would have been. It could be each attempt to smuggle contraband in, which seems to make sense to me, but it could be each category of prohibited object. And so cell phones and other devices are all one category. And just on that point, I think Judge Monacovo's question is, if we accept that view, is there a way of accepting that view while also accepting that in D1A, a firearm is different than a controlled substance? I don't know. One possible answer is that there's an Article A for a firearm, and then again, for a controlled substance. So that one way of reading the statute is every time you have an A+, until you get to an or, you've got a category. Okay, that would work. I'm sure you'd think so. And so it's our contention that the statute is not clear, and so the rule of lenity applies. And then on the false statements question, we don't have the form in the joint appendix. The visitor form doesn't appear in the joint appendix. I apologize for that. I should have included it. It was introduced into evidence. And what does the form say? It says, as I recall, I do not have in my possession any of the following objects, and then it has a list. And that's under a form that's about visiting a particular inmate. It has the inmate's name on the top, and you fill out one for each inmate. But it says, I'm not bringing into this institution. So. On your view, if a defendant brought in three, let's see, a firearm and two bullets, and let's do a firearm and a magazine. Handed the firearm to prisoner A and the magazine to prisoner B, is that two offenses or one? Well, that would be two offenses under the smuggling. Yeah. And then if I say, in response to a question from law enforcement, are you bringing any firearm or magazine to prisoner A? And they say no. That's one false statement. If they then say, are you bringing a magazine or firearm to prisoner B, are you saying it's still one false statement? Yes. Because the question asks. No, no. I'm asking the question. The question I want to know is, the law enforcement says, are you bringing a firearm or magazine to prisoner A? I say no, and that's false. That's one false statement. Everybody agrees. Yes. I now ask, are you bringing a firearm or magazine to prisoner B? And I say no. And that's false. Is that a second false statement? I'm not saying that's your case. I'm asking in my hypothetical. I understand. And in your hypothetical, your hypothetical is based on an incorrect reading of the form that I gave you. I'm not reading a form. I just want to know your answer to my question. Imagine the form says what my question says. Is that two false statements or one? That's very hard to answer because the form says, are you bringing something to prisoner A? Forget there's a form. Please pretend there's no form. Okay. Just the text of my two questions is that two false statements or one. And your question is, I'm bringing a— Are you bringing a firearm to prisoner A? No, that's false. That's one false statement. Everybody agrees. Now I ask, are you bringing a firearm to prisoner B? And I say no. Is that a second false statement? Yes. Okay. So the whole case turns in whether the form is asking the questions I just presented or something else. You must be of the view the form's asking something else. What do you understand the form to be asking? Whether the person is bringing contraband into the facility, different kinds of contraband into the facility. And so the same question is asked on the same form, answered at the same time, given to the same recipient. And what is the relevance of the fact that on that form it's in relation to a visit to two different prisoners? None, because the form is not asking, are you bringing firearms to prisoner A? And are you bringing firearms to prisoner B? Remember, this is a form that's presented upon entry into the facility. And so it's either true or false right then. Why do they have three different forms then for three different persons that you're visiting? I think the forms are used also for them to check were any of those guys in quarantine. Are they still here? Are they available to be seen? Well, the forms are used to – you've got three forms for three different inmates, so each can be brought back, right? Yes. That's why you sign one, and that's the way it's always been at MDC, going back 30 years. You have to file – you're visiting 15 clients. You have to file 15 forms. Then I get to the questions. Why are they asking that question with respect to each prisoner being visited rather than just asking about the visit that day? And then whatever information they need to know about the individual visits, why are they repeating in those forms the question, are you bringing it into the facility? A non-crazy inference would be, I want to know if you're bringing it in for the purpose of that visit. I think the reason it's done this way is that it's always been done this way, and the Bureau of Prisons is a bureaucracy that is not focused on efficiency. And they use a form to then go get the prisoner. If we agree with you that the indictment is multiplicitous, say on both charges, I think you say we should vacate and retry rather than enter a conviction in each count. Why do you suggest that? Because it necessarily informs how the jury is looking at the case. Here's a guy charged with two crimes, or here's a guy charged with five crimes. And Mr. Armenteris' lawyer below raised the issue right at the get-go, as you're required to do, which suggests that the court has the ability to decide it right then at the get-go and make the government either supersede or choose which counts. It's going to go forward. Do you applaud that we could work with that? Do you rely on him to suggest that that's the way? I don't believe I found any cases that said, here's what we did in this case. We required you to make the choice right at the get-go, although I'm not sure that would necessarily be the subject of an appeal. The Lilly case, which the government relies on, says that it's enough to just give the relief after the fact and send the case back for resentencing. And the distinction between here, our case, and Lilly would be just that this court relied on the fact that in Lilly, the trial judge instructed the jury no fewer than seven times that it had to consider each count separately. And here, the judge did that only once. Thank you. Do you have a question? Yeah, I have one. It's going to be a quick question. But I know your other point is beyond reasonable doubt instruction. I just know there's a Supreme Court that's never held this is instruction that must be provided across reasonable doubt in every case, nor has our court. So my question to you, are you saying – and by any way, I just want to have it clear that the instruction that – I know your client wanted particular instructions. That was rejected. But in various cases, they need unreasonable doubt instruction. Are you suggesting in any way that instruction was wrong?  Our claim on appeal is that the limits placed on defense counsel closing argument, which included a prohibition on him using the phrase doubt based on reason. But the defense, same as the prosecution, has to stick to what the district court instructions are. You're not required to repeat them verbatim. You're not allowed to contradict them, and you wouldn't be able to say reasonable doubt is a doubt to a means of moral certainty or that. Isn't there a risk that a doubt based on reason could be just a possibility? No. This court has said doubt based on reason, that's fine. And if the judge instructs the jury a reasonable doubt is a doubt based on reason, that's fine. But even with the district court sustaining objection to that, the client would argue counsel for him was a very highly experienced counsel. He was still able to argue reasonable doubt to the jury, correct? So with all due respect, I think that's the wrong question to be asking here, to ask whether defense counsel still did a good job with these restrictions placed on him. The question is, was he able to argue the case, give a closing argument in the case, an entirely appropriate closing argument in the case in a way in which he felt best served his client? And the answer here is no. But you need to show prejudice. You're not denying that, right? We are. I am. I think it's a structural error. Is there a case law saying that? I didn't find any case law saying that. Any restriction on the closing argument, even if he was able to make the basic point, is automatically? There's case law that's quoted in our brief that says the quality of representation cannot cure a violation of the right to counsel of choice. And that's what we're saying here, is my client chose this counsel. Thank you, counsel. At this time, would counsel for the United States please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court? Assistant United States Attorney Julian Brzezinski for the United States. This is a case that went to trial after a defense counsel in this jurisdiction attempted to introduce contraband into NBC. I think we know the facts of the case. You can get right to the legal argument. With respect to starting first with the issue of multiplicity and focusing first on the issue of contraband, just a plain reading of the statute, I think Judge Montecarlo raised this issue, Section E1A, which distinguishes between a firearm, destructive device, or controlled substance. I think that section helps understand how this statute should be read. If someone were to walk into NBC or attempt to walk into NBC with a firearm and a kilo of cocaine, the argument that the government wouldn't be able to charge for them wouldn't make sense. Could they charge for a firearm and a destructive device? Firearm or destructive device or controlled substance? It says a firearm or destructive device, and then it says or a controlled substance. So suppose they have a destructive device that's not a firearm and a firearm. Are you saying they can charge for both? Yes, Your Honor. I think that whole section really – those items are grouped together not for purposes of saying that those things are the same, but rather these are the possible punishments. And if I come in with a vial of three pills of some controlled substance, is that three violations or one? In that case, I think the government could also charge for three violations. So then with respect to marijuana, if I bring marijuana in and I have it in a bag, can you charge for every lead? In that case, I would say there it would not make sense, Your Honor. Why? Because that's a type of narcotic that is normally charged by weight, not by individual lead. What if it's packed individual baggage of marijuana or cocaine? Can you charge them separately or do you have to charge them in bulk? Let's assume instead of the SIM cards, there were like 70 small baggages of marijuana or cocaine or heroin. Again, generally in other statutes in which narcotics are charged, we need the marijuanas charged by weight. SIM card is a different thing. What does that mean by charged by weight? That means – are you taking the view then that if I have 5,000 pounds of cocaine and I have a gram of cocaine, it's the same under the statute? Under this statute? Yeah. There doesn't seem to be a distinction here among weight, so it's unclear how… So you say yes, if that's how they meant that. Yes. And yet they meant to distinguish between one SIM card and two SIM cards. I think in that case, yes. Like I would be charged only… And if I bring a phone in and it's a working phone, is that two offenses? You have a working phone and a SIM card? No, I have a working phone, which means it has a SIM card in it. Okay. Is that two offenses? There could be two offenses. Could be, or there is two offenses? There is two offenses. So there's two offenses if it has on it a phone battery. That's three offenses now? No, because the statute there, Your Honor, says a phone or other device used by a user of a commercial service device defined from Section 332D of the Communications Act of 1994, the battery can't connect on its own to any sort of cell tower. A SIM card, though, is a device that stores information that, you know… For example, e-mail will give you a SIM card. So we're to understand this as meaning when they said phone, they meant phone without a SIM card? Yes, Your Honor. And the reason for that would be that in that situation, you have a SIM card that can't connect to those… That falls under the definition of the Communications Act of 1934. You also have the phone that is issued, you know, by… And why wouldn't it be at least reasonable, Your Honor, to read the phrase phone or other device as a category type? And then controlled substance is category type. Firearm or other destructive device is a category type. And what they're saying is, just as you say with respect to cocaine or something like that, if you can't bring in anything in that category, we're not focused on quantity, that's the contraband. If you bring something like that in, that's the offense. And obviously if you do it a second time on a different day, that would be a new offense. No, that second part I understand. With respect to a phone or other device, I think one distinction that the court has to keep in mind is that – and this came out also, you know, in the trial testimony – that the potential harm from the introduction of a cell phone SIM card is distinct in each one of those cases. We're just trying to figure out what the statute clearly states. One, in Kersey, they note that sometimes statutes say the. When it says the, it seems quite clear that they're talking about individual items. And it distinguished the from a. You distinguish a from any. So any is on one spectrum and the is on the other spectrum, but doesn't that just suggest maybe a is right in the middle, which would make it somewhat unclear? It's still – you know, the statute says a phone or other device. And then with respect to something like a firearm or destructive device, that's one. Well, why does it say a firearm or destructive device or a controlled substance? Why wouldn't it just say a firearm, destructive device, controlled substance if you were right? Why is there that second a right before controlled substance? Because as we were discussing earlier, a controlled substance generally – No, but it says a firearm or destructive device or a controlled substance. Doesn't that suggest the first is a type and the second is a type? That's why there's an a before the firearm or destructive device, and then a second a before controlled substance with an or as the conjunction between the two. Why wouldn't that be a natural reading on it? The government's position is still that a firearm or destructive device could be charged. But if it were intended to be that way, wouldn't the natural listing be a firearm, destructive device, controlled substance, or controlled substance referred to in the surrogate if it's not written that way? That's correct. It's not written that way. But instead, it's written each time there seems to be a new type of contraband, the word a appears before, which suggests that they're focused on the type. So a firearm or destructive device would be a type. And if you use that same logic, why wouldn't you read phone or the other device as a type? Again, the harms with respect to a phone or other device are different in this case. But we're just trying to figure out the textual interpretation. I may have misunderstood you, but I think you make another argument that the or matters as well in the interpretation. But is there any case law that helps us figure this out or interprets that language? The or. I don't have any case law on hand at the moment with respect to the or language. I understand the point that Barrett is trying to make, that these are a firearm and a destructive device. Similarly, here we have a phone or other device. Those seem to be the same type. Well, only because it's been set off by another or followed by an a. Yes, I understand that. Counsel, let me ask you. Let's assume we were determined that we're neplicit. What would be the remedy of the no one's thinking? Well, that's an important question, because at the end of the day, there is case law, you know, suggesting that if the indictment is, quote, neplicitous, there's no need for a new trial. In this case, the defendant was sentenced concurrently after all five counts. The only issue would be regarding the special monetary assessment of $350. And the convictions would be wiped away. Not all of them, but the ones that were. But counsel has an argument that there should be a new trial, because when you charge five times, the jury is making these findings. And it's kind of the government would be inclined through the court that, you know, there were more violations than there should have been. My answer to that would be that even if the government had charges of just two counts, false statements in one and contraband in one, the evidence that the government would have presented in the trial would have had to have been exactly the same evidence. There would have been no difference whatsoever in the evidence presented by the government in that case. So the government would have still set aside two forms, 70, whatever, to the contempt court. And the government introduced all three forms that the defendant presented to the front guard and also the court form. So with respect to the three false statements that the government charged, as to the three forms that were presented to the guard, the government did introduce those three evidence and those false statements. While charged separately, the evidence presented regarding them were pretty different. Okay, turning to the false statements, if law enforcement asks the person who turns out to be the defendant, are you bringing any contraband into this facility? They say no. They say I'm sorry, I didn't catch that. Are you bringing any in? They say no. They said, can you just do it one last time for me? Bring any in? No. Is that one offense in the government's view or three? That's one offense, Your Honor. Okay. So you have the same issue as they do. It all depends how we read the form. Okay, so from your perspective, why isn't her account of the form correct? All it's doing is asking, on this day, are you bringing anything into the facility? And they just keep asking, but he keeps giving the same answer, so it's just one violation. The difference is you have three forms here for three separate inmates. But is the question being asked on those forms different each time, or is it the same question, are you bringing anything into the facility? And he's saying, don't you want this? I'll tell you again, but I'll tell you a third time. To answer that question, the question on the form is identical because the form is identical. Again, longstanding tradition at MDC. Why not? Well, I'm not sure of the DOP facilities, but it's one form per defendant. But ideally – not ideally, I would say in theory. I mean, MDC tomorrow could start with another form that says Counselor Annette Theros, who lists the names of the clients who are going to go, their number, and then just one single question can apply as well. That could also be the case, correct? They could, but they don't do that. Yeah, but they also could ask, with respect to each person, are you bringing any contraband during this visit? And that's why, in this case, there are three forms. You have to certify as to each person you plan on visiting whether you answered those questions. So put it in a different context. Say, to your example, the front guard says, okay, you want to visit defendant number A, I'm going to have to go through these questions with you. All those questions, as they apply to defendant A that you want to visit. You just said, as they apply to defendant A. Exactly. But that's a somewhat different question, arguably, then. Are you bringing anything into this facility on this day? But I think the fact that you have to fill out a different form for each defendant that you plan on visiting, those questions apply to – Let me also ask you, the fact – and this is a bigger case. The fact that Mr. Montalos was an experienced counsel on the MDC not that many times, doesn't the fact that he's aware that he needs to file a form for each client weigh in in everyone's favor also? The fact that he hasn't filed – He knows, at least when he goes there, that a file takes a different form. Yeah, I mean, it came out in the trial testimony. The government introduced the law, but how many times the – That's why I'm asking. The fact that he hasn't gone in, does that identify the law? Does that weigh in in any way – Again, I still see the concern of the questions that the defendant has asked you, but even in light of that, does that in any way improve the government's position? Again, the government position is that those statements are different, and one way to explain this as well is that – and this came up during the trial, during the stipulation, in which it was stipulated by the parties that each of the people that the defendant had certified that he was going to visit that day, each of them had been interviewed by MDC, and each of them had their cells searched. And so the fact that you're making a false statement with respect to different inmates on different forms requires the government, in this case the Bureau of Prisons, to act accordingly as to each defendant. So those false statements have a – But just to take that example – sorry, I just want to – let me just address this one point. Just to take the first example you started with, I say, are you bringing any contraband to the facility? Sorry, I didn't hear you. Could you say that again? Could you say that again? If in each instance I say no, you say that's one false statement. Correct. But if on that day he went to three different visitors, three different prisoners, they still have to do the same investigation of the three, but you're conceding in that instance it's still one false statement. So the question is just the same, isn't it? But in the question that Your Honor just asked, the front guard officer there simply just started with asking the same question over again with respect to the same inmate or to different inmates? Just to the visit. Just to the visit in general. But that's not why MDC does it, and the formula you're submitting – Well, the problem is the form says, are you bringing anything into the facility? But the form is specific to inmates. But the other thing is the form can't – it's not a way to interpret the statute. Do you agree with that? Correct. And again, but that's – But the statute is a false statement. Yeah, but my – again, my question is – and again, I don't expect you to know, but there may be other DOP facilities where it's just one single form for everybody. May I answer? Yeah. That I don't know. I don't know how other DOP facilities – my understanding is that that form is a pretty standardized form that DOP uses because it's labeled as a DOP form that you get off the DOP website. And my understanding would be that all DOP facilities use that same form. Okay. Yeah. Could we switch to the evidentiary issues? And I'm thinking – I'm sort of thinking about the limiting instructions here and what the appellate has argued and whether they were sufficient. And one thing that concerned me was the argument the government made in closing an argument that Armando Monteros must have been part of a violence organization and at war with Latinx people. And I sort of wonder if that undermined the efficacy of the earlier limiting instructions since, in large part, that was exactly what the jury was able to keep out of their mind. And can we consider that? Your Honor, I'll start with the second part first of whether or if you consider that. The government's position would be, no, there was no issue raised here regarding prosecutorial misconduct with respect to the rebuttal. That issue was raised in the context of – Yeah, I don't mean prosecutorially. I'm meaning if we're weighing whether the limiting instructions – Was it mine? Yeah. Well, Your Honor, there was no indication here that the jury didn't follow those instructions. Your view is that the jury instruction allowed that closing argument or precluded it? Precluded the argument that – make the argument that someone could be part of an organization. I don't think it limited it because – Yeah, so then doesn't that add – if that's right, then doesn't that add to the 403 problem? So there's no limiting instruction allowed for this very thing, which would have been highly prejudicial. And there's no indication – there's no evidentiary basis for concluding that he's part of that organization. He doesn't even know the person. Well, to be clear, the – that applies to Kendrick Morales-Torres, who was a client of the defendant. The defendant had a platform with him for Kendrick Morales-Torres. With respect to the testimony that came in with Laguna Santos, Laguna Santos indicated that Kendrick Morales-Torres and his gang were at war with his gang. So in closing, in rebuttal rather, the government made the argument that Armenteros, the defendant, arguably had to be a part of an organization, which makes sense. Because if you're bringing in contraband, the government's theory that that contraband was intended for Kendrick Morales-Torres, a client of the defendant, because of evidence that was introduced at trial. One, he had just gotten back to NBC from the mainland United States. He had restricted privileges. He was someone that was a – what's called a mir a trote, someone that's high up in the organization that could afford those phones. And finally, he had a history of contraband, not just any contraband, but this contraband, cell phones and related devices. So the argument that he was – that the defendant would have been a part of that organization, a part, is just someone that participates in the organization. If you're bringing in contraband that the organization potentially uses to conduct criminal activity on the outside, that certainly makes you a part. And with respect to when the government may start – And that would be just the same way in a drug conspiracy if somebody is a lookout but still part of the organization. Anybody – one thing is rogue, but being part is anybody who knowingly participates, right? Exactly, like a drug mule. You say that the drug mule isn't part of the organization to a certain extent. In this case, it's not very different from that. This is someone that is bringing in this contraband. And the government's theory is that it has to be intended for someone on the inside. And the government's theory was that it was intended for this individual in particular. Thank you. The government will rest. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce herself on the record? She has a two-minute rebuttal. Thank you. Tina Schneider for Mr. Armenteros. I'd like to just focus on the evidentiary issues. Could you address just that last argument from the government? Which was, of course, he was part of this organization. And that the living instruction allowed that argument to be made. And then if you could just explain to us why, what your response to that line of defense is. So, the living instruction did not prohibit the jury from making that conclusion. The government's agreeing with you. Yes. And that is so prejudicial and so outrageous. If you step back a minute and you say, Mr. Armenteros was a criminal defense attorney. He was visiting clients in a federal prison. Many of them, most of them, maybe all of them, had been charged and convicted of doing really bad things. Violence, drugs, firearms. And the government is using that to say, he must have been part of that organization. Because he represented this guy for whom he did not submit. But providing SIM cards or phones to persons who were in prison or, yeah, this is not true. They're not inferring that because they were in the drug organization, he must have had a cell phone on him to give to them when he didn't have one. They're saying, given the evidence of him bringing in contraband, here must be why he was doing it. Here is what their argument. He brought in contraband. Therefore, he must be part of a drug, a violent drug organization. Therefore, he brought in contraband.  Knowing. So they have to prove knowing. They have to prove knowingly, but they can't prove knowingly in this unbelievably unfair and prejudicial way. But if you look, again, you have to look at the entire transcript of the proceedings. And there's a lot of other evidence. I know there's evidence of this financial situation. He's representing criminal defendants. These are criminal defendants involved in this. Why would this be? Again, I can't see why the government would not present that. Judging by the number of… But the government has to prove we don't know the reasonable doubt. So it's closing every doubt. Justify. Is the key thing that this person is not a person he was visiting? Well, that's certainly one of the key things. And in their brief, they say, well, it doesn't matter even if he wasn't visiting this guy. Okay. We just stopped. I understand you're frustrated. But with respect to if one were of the view that if the person testifying was one of the people he visited, where the evidence was about one of the people he visited, that would be different. But it's a person he didn't visit. So can you just help us understand on your view why that is so significant? I take it the person he didn't visit who's testifying is part of the same organization, or is that not right? Do I have it wrong? The person who testified, Laguna, was a different organization at war with Moral's organization. Laguna, in addition to all his evidence about smuggling, also told the jury about Moral Torres, how bad a guy he was. And then there was other evidence presented at trial. So what I'm trying to figure out is you are saying the prejudice is that they thought he was – that it would suggest that this defendant was part of this other organization, or is that not your argument? And the point is that the jury might have thought he was part of the – is it Morello or how do you say it? Moral Torres. Moral Torres' organization. Which of the two are you saying? The second. That they might have thought he was part of Moral Torres. You're not suggesting that this would have led them to think he was part of this other organization. No. No. But the government said, just like Laguna did this for his organization, Armenteros is doing this for his organization. But then the person who's testifying is describing that organization, right? Yes, and also talking about – And the people he's bringing the content into are members of that organization, correct? Yes. So I guess I'm having the same issue, Judge Healthy, is the government's theory is he was bringing it in to assist that organization. Now you have somebody saying that organization uses the phone. So why isn't that prohibitive directly of whether he was doing it for that purpose? I guess the point is that he was not visiting Moral Torres that day. They used the fact that he represented Moral Torres and had a backup BOP form in his stuff in case one of his clients was in quarantine. They used that to convert the trial from a contraband smuggling into the prison trial to something else entirely. And I'd just like to finish off by saying, if you're judging by number of pages of transcript devoted to the Laguna testimony and other evidence concerning Kendrick Moral Torres, fully one-third of the trial was devoted to that. Thank you.  Thank you, Counsel. That concludes argument in this case.